**ALEX SINK**
**CHIEF FINANCIAL OFFICER**
**STATE OF FLORIDA**
Florida Department of Financial Services


10-53250

NEW WORLD CONDOMINIUM APARTMENTS
II CONDO ASSOCIATION, INC.,

PLAINTIFF(S),

VS.

GREAT AMERICAN INSURANCE COMPANY,

DEFENDANT(S).

CIVIL ACTION SUMMONS, COMPLAINT, EXHIBIT"A"

CASE #:    10 44777 CA 27
COURT:    CIRCUIT COURT
COUNTY:  MIAMI-DADE
DFS-SOP#: 10-53250

**RECEIVED**

SEP 0 2 2010

**E.L.D. CLAIMS**

RECEIVED

AUG 3 0 2010

Great American Ins. Co.
Corp. Legal Dept.

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial
Officer of the State of Florida. Said process was received in my office by MAIL on the 26th day
of August, 2010 and a copy was forwarded by Electronic Delivery on the 30th day of August,
2010 to the designated agent for the named entity as shown below.

GREAT AMERICAN INSURANCE COMPANY
EVE CUTLER ROSEN  (clegal@gaic.com)
GREAT AMERICAN INSURANCE COMPANY
580 WALNUT STREET
CINCINNATI, OH  45202

* Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any
subsequent filings, pleadings or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080.

*Alex Sink*

Alex Sink
Chief Financial Officer

cc to: Plaintiff's Representative for filing in appropriate court:

MARIANO R. GONZALEZ
SUITE 603
3600 RED ROAD
MIRAMAR FL 33025

JGJ

Division of Legal Services - Service of Process Section
200 East Gaines Street  - P.O. Box 6200 - Tallahassee, Florida 32314-6200  - (850) 413-4200  - Fax (850) 922-2544

EXHIBIT 1

RECEIVED

SEP 0 2 2010

E.L.D. CLAIMS

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.:

10-44777

NEW WORLD CONDOMINIUM
APARTMENTS II CONDO ASSOCIATION,
INC.,

     Plaintiff,

vs.

**CIVIL ACTION SUMMONS**

GREAT AMERICAN INSURANCE
COMPANY, a Foreign corporation,

     Defendant.

_____/

THE STATE OF FLORIDA:

To Each Sheriff of Said State:

     YOU ARE HEREBY COMMANDED to serve this summons and a copy of the
complaint or petition in this action on Defendant:

> GREAT AMERICAN INSURANCE COMPANY
> in care of the Chief Financial Officer
> 200 E. Gaines Street
> Tallahassee, Florida 32399-0307

     Each defendant is required to serve written defenses to the complaint or petition on
Plaintiff's attorney, **Mariano R. Gonzalez, Esq., Gonzalez & Associates, P.A., whose address
is: 3600 Red Road, Suite 603, Miramar, Florida 33025, Tel: 954-538-1304**, within 20 days
after service of this summons on that Defendant, exclusive of the day of service, and to file the
original of the defenses with the Clerk of this Court either before service on Plaintiff's attorney
or immediately thereafter. If a defendant fails to do so, a default will be entered against that
defendant for the relief demanded in the complaint or petition.

     DATED ON _____ AUG 1 8 2010 , 2010.

                                          RANITA DANIEL

                                   By:_____
                                   HARVEY RUVIN
                                   Clerk of Said Court

IN THE CIRCUIT COURT OF THE
11TH JUDICIAL CIRCUIT IN AND
FOR MIAMI-DADE COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO.:

10-44777 CA 27

NEW WORLD CONDOMINIUM
APARTMENTS II CONDO ASSOCIATION,
INC.,

      Plaintiff,

vs.

GREAT AMERICAN INSURANCE
COMPANY, a Foreign Corporation

      Defendant.

_____/



ORIGINAL
FILED

AUG 18 2010

HARVEY RUVIN
CLERK

## COMPLAINT

Plaintiff, NEW WORLD CONDOMINIUM APARTMENTS II CONDO
ASSOCIATION, INC. ("NEW WORLD"), by and through undersigned counsel, hereby sues the
Defendant, GREAT AMERICAN INSURANCE COMPANY ("GREAT AMERICAN"), a
Foreign corporation, and states as follows:

    1.    This is an action for breach of contract wherein Plaintiff seeks damages in excess
of $15,000.00, exclusive of interest and costs, and for equitable relief.

    2.    Plaintiff, NEW WORLD, is a Florida non-profit corporation duly authorized to
conduct business in the State of Florida.  NEW WORLD is the condominium association for the
condominium building located at 301 N.W. 177th Street, Miami, Florida 33169 (hereinafter
referred to as the "subject building").

1

3.     Defendant, GREAT AMERICAN, is, upon information and belief, a foreign corporation duly authorized to conduct business in the State of Florida, and which does, in fact, issue policies of insurance in Miami-Dade County, Florida.

4.     At all relevant times herein, NEW WORLD was insured by GREAT AMERICAN under an Executive Protection and Employment Practices Liability Insurance Policy bearing Policy Number: EPP3800618-01 (hereinafter referred to as the "subject property") which provided coverage to NEW WORLD for claims made against NEW WORLD for a "wrongful act." A copy of the declarations page for the policy period from December 11, 2006 through December 11, 2007 and the subject policy of insurance is attached hereto as Exhibit "A." Upon information and belief, said policy was also in effect during the following policy periods: December 11, 2007 through December 11, 2008 and December 11, 2008 through December 11, 2009.

5.     On or about October 24, 2005, NEW WORLD sustained damage to the roof and interior of the subject building as a result of Hurricane Wilma. Prior to January 2007, NEW WORLD hired a company named TRICOAST ROOFING, LLC, f/k/a ABC ROOFING ("TRICOAST"), to replace the roof of the subject building which had been damaged due to Hurricane Wilma.

6.     TRICOAST began replacing the roof at the subject building prior to January 2007.

7.     LOUIS GACHELIN ("GACHELIN") acted as the president of NEW WORLD's board of directors from January 2007 to January 2008. However, at the time that NEW WORLD hired TRICOAST to replace the roof of the subject building, GACHELIN was not the president or a member of NEW WORLD's board of directors.

2

8.     In January and March of 2007, the insurance company which insured the condominium building paid monies to NEW WORLD for the Hurricane Wilma loss. These monies were paid after TRICOAST had started to replace the roof of the subject building and while GACHELIN was acting as president of the board of directors.

9.     When the payment was made by the insurance company to NEW WORLD, GACHELIN took on the responsibility of ensuring that the repairs to the subject building would be conducted properly and that the parties responsible for the repairs would be paid from the funds received from the insurance company.

10.     Thereafter, GACHELIN unilaterally hired UNITED CONSTRUCTION ENGINEERING, INC. ("UNITED") to repair the interior of units and allegedly repair the exterior and roof of the subject building and prevented TRICOAST from completing the replacement of the roof; thus, breaching the contract NEW WORLD had with TRICOAST for the replacement of the roof of the subject building.

11.     As a result of GACHELIN's acts, neglect or breach of his duty as president, TRICOAST filed a lawsuit against NEW WORLD for the remaining balance of $320,722.00 it alleges is due under the contract for the work it performed to the subject building. Said lawsuit against NEW WORLD constitutes a "claim" under the subject policy of insurance since it stems from GACHELIN's wrongful acts.

12.     NEW WORLD reported the claim presented by TRICOAST to GREAT AMERICAN in writing in accordance with the terms of the subject policy of insurance.

13.     However, GREAT AMERICAN, by word, conduct and deed, has denied coverage and has refused to pay the benefits due for the covered loss or to pay for the costs of defense

3

incurred by NEW WORLD as a result of the lawsuit filed by TRICOAST.

14.   GREAT AMERICAN's conduct has caused NEW WORLD to retain the services of the undersigned attorney to represent it in this action, and GREAT AMERICAN is, therefore, also liable for reasonable attorney's fees pursuant to Fla.Stat. § 627.428 for such services.

### COUNT I – BREACH OF WRITTEN CONTRACT

15.   NEW WORLD restates paragraphs 1 through 14 as though fully set forth herein.

16.   At all times material, the subject insurance policy was in full force and effect.

17.   NEW WORLD complied with and performed all conditions precedent under the subject policy for the recovery of benefits and/or said conditions were waived by GREAT AMERICAN.

18.   GREAT AMERICAN, therefore, has breached the terms of the subject contract of insurance by failing to pay the benefits which became due and owing to NEW WORLD as a result of the covered loss and by failing to pay for the costs of defense incurred by NEW WORLD as a result of the lawsuit filed by TRICOAST.

19.   As a result of GREAT AMERICAN's breach, NEW WORLD has suffered damages in the amount of insurance benefits due and owing to it under the subject policy.

WHEREFORE, Plaintiff, NEW WORLD CONDOMINIUM APARTMENTS II CONDO ASSOCIATION, INC., demands judgment against Defendant, GREAT AMERICAN INSURANCE COMPANY, a Foreign corporation, for (i) damages and interest thereon; (ii) attorney's fees and costs pursuant to Fla.Stat. § 627.428; (iii) reimbursement for the "cost of defense" pursuant to the subject policy of insurance; (iv) and such other and further relief as this court deems just and proper.

4

## COUNT II – DECLARATION OF RIGHTS

20.   NEW WORLD restates paragraphs 1 through 14 as though fully set forth herein.

21.   The subject policy of insurance states as follows under Section 1. Insuring

Agreement:

> "If during the **Policy Period** or the **Discovery Period** any **Claim** is first made against an Insured for a **Wrongful Act**, including an **Employment Practices Wrongful Act**, the **Insurer** shall pay on their behalf **Loss** resulting from such **Claim**. The **Insurer** has the right and duty to defend any **Claim** to which this insurance applies, even if the allegations of the **Claim** are groundless, false or fraudulent."

*See the subject policy attached hereto as Exhibit "A."*

22.   Under Section III. Definitions, the policy defines a "Claim" as follows:

> K.   **"Claim"** shall mean: (1) any proceeding initiated against an **Insured**, including any appeals therefrom, before (a) any governmental body which is legally authorized to render an enforceable judgment or order for money damages or other relief against such **Insured**, or (b) the Equal Employment Opportunity Commission, or any similar governmental body whose purposes is to address employment practices; or (2) any written demand seeking money damages for a **Wrongful Act**."

*See the subject policy attached hereto as Exhibit "A."*

23.   According to the subject policy, Notice of Claim has to be provided in the

following manner:

> **Section VII. Notice of Claim**
>
> A.   The **Insureds** shall, as a condition precedent of their rights under this Policy, give the Insurer notice in writing of any **Claim** made, as soon as practicable from the date the Chairman, President, Executive Director, Chief Financial Officer, General Counsel or equivalent has knowledge of the **Claim**, and in no event later than ninety (90) days after the end of the **Policy Period**. *See page 3 of Form D9718.012 (01/97)*

24.   GREAT AMERICAN denied NEW WORLD's request for a defense in the

lawsuit filed against it by TRICOAST due to GREAT AMERICAN's position that notice of the claim was not made in accordance with the terms of the subject policy of insurance.

25.    Due to GREAT AMERICAN's denial of coverage for the defense of the TRICOAST action against NEW WORLD, NEW WORLD is unsure as to its rights under the subject policy of insurance with GREAT AMERICAN. Therefore, NEW WORLD is in need of a present declaration of rights under the subject policy of insurance and Florida Law.

26.    The facts necessary for this Honorable Court to render NEW WORLD's declaration of rights are set forth in this complaint or are ascertainable by this Honorable Court.

27.    NEW WORLD's right to recovery under the subject insurance policy is dependent upon this Honorable Court's finding of facts and/or application of Florida Law.

28.    GREAT AMERICAN's interest in this declaration of rights is actual, present, adverse and antagonistic in fact and/or law to NEW WORLD's interest.

29.    All parties whose interests are adverse and antagonistic are before this Honorable Court by proper process.

30.    NEW WORLD seeks relief in order to enforce contractual/legal rights, not to merely seek legal advise from this Honorable Court.

WHEREFORE, Plaintiff, NEW WORLD CONDOMINIUM APARTMENTS II CONDO ASSOCIATION, INC., prays this Court enter judgment against the Defendant, GREAT AMERICAN INSURANCE COMPANY, for (i) a declaratory judgment that Defendant is required to defend Plaintiff against the action brought by TRICOAST and/or reimburse Plaintiff for the cost of defense; (ii) an award of all benefits due under the subject policy of insurance; (iii) attorneys fees pursuant to Fla.Stat. § 627.428; (iv) pre-judgment interest; (v) taxable costs; and

6

(vi) such other relief that this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable as of right by jury.

Dated this 17ᵗ day of _August_, 2010.

Law Offices of
Gonzalez & Associates, P.A.
Attorneys for Plaintiff
3600 Red Road, Suite 603
Miramar, Florida 33025
Tel: (954) 538-1304

By:_____
Mariano R. Gonzalez, Esq.
Fla. Bar No. 983063

7

# EXHIBIT "A"



**GREATAMERICAN®**
INSURANCE GROUP
580 WALNUT STREET, CINCINNATI, OHIO 45202

|  |
|---|
| **Declarations for Non-Profit Organization Executive Protection and Employment Practices Liability Insurance Policy** |

Insurance is afforded by the company indicated below: (Each a capital stock corporation)

- Great American Insurance Company
- •American National Fire Insurance Company

- Agricultural Insurance Company
- •Other _____

Policy Number: EPP3800618-01    Policy Form Number: D 9100

Item 1.   Name of Organization: New World Condominium Apartments II Condo Assn

Mailing Address:   c/o Astor Management Services
2100 West 76th Street, #407

City, State, Zip Code: Hialeah, FL  33016

Item 2.   Policy Period: From 12/11/2006            To        12/11/2007
(Month, Day, Year)                  (Month, Day, Year)
(Both dates at 12:01 a.m. Standard Time at the address of the Organization as stated in Item 1)

Item 3.   Limit of Liability:
$1,000,000              Aggregate Limit of Liability for Each Policy Year

Item 4.   Retention:
$1,000                        Each Claim

Item 5.   Premium:
$845.00

Item 6.   Endorsements Attached:
Non-Profit Organization Executive Protection and Employment Practices Liability Insurance Policy D 9100 (12/99)
Property Managers Endorsement D 9718 (01/97)
Elite Coverage Amendments D 9718.012 (01/97)
Punitive Damage Endorsement D 9713-2 (01/97)
Terrorism Coverage Endorsement D 9876 (12/02)
Terrorism Coverage Premium Disclosure D 9800-1 (02/03)
General Limitation of Coverage Endorsement D 9500 1-2 (01/97)

Item 7.   Notices: All notices required to be given to the Insurer under this Policy shall be addressed to:
*Great American Insurance Companies*
*Executive Liability Division*
*P.O. Box 66943*
*Chicago, Illinois 60666*

Item 8.   Initial Coverage Date: 12/11/2005

These Declarations along with the completed and signed Proposal Form and Non-Profit Organization Executive Protection and Employment Practices Liability Insurance Policy, shall constitute the contract between the Insureds and the Insurer.

NOT REQUIRED _____              NOT REQUIRED _____
*(Authorized Representative)*                          *(Countersignature Date)*
D 9102 (3/97)



**GREAT AMERICAN**
INSURANCE GROUP

**Non-Profit Organization
Executive Protection and
Employment Practices
Liability Insurance Policy**

### AMENDMENT TO SECTION VIII

It is understood and agreed that Section VIII of the Policy is hereby amended as follows:

L.  Addition of Property Manager as an Insured is hereby added to the Policy.

    (1) Section III. B. is deleted and replaced with the following:

        B.  "Insured" shall mean the Organization and any Subsidiary and all Insured Persons.  Insured shall also mean any Property Manager, but only if such Property Manager is acting pursuant to the written authority granted by the Organization or on behalf of and at the direction of the Organization or any Subsidiary.

    (2) Section III. C. is deleted and replaced with the following:

        C.  "Insured Persons" shall mean all persons who were, now are, or shall be directors , trustees, officers, employees, volunteers or staff members of the Organization or its Subsidiaries, including any executive board members and committee members whether salaried or not.  It shall also mean all persons who were, now are, or shall be directors, trustees, officers, employees, volunteers or staff members of any Property Manager, but only if such persons are acting within the scope of their employment with the Property Manager and on behalf of the Organization or any Subsidiary.

    (3) Section III. Definitions is amended by the addition of the following:

        M.  "Property Manager" shall mean any entity providing real estate property management services to the Organization or any Subsidiary pursuant to a written contract.

With respect to the coverage provided to any Property Manager and its directors, trustees, officers, employees, volunteers or staff members by this endorsement and notwithstanding Section IV.D of the Policy:

Section IV. is amended by the addition of the following:

        K .  based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any Employment Practices Wrongful Act alleged by or on behalf of an employee of the Property Manager.

---

Insured: New World Condominium Apartments II Condo Assn

Policy Period: 12/11/2006 To  12/11/2007          Policy Number: EPP3800618-01

Countersigned by: Not Required                Endorsement Effective Date: 12/11/2006
           **Authorized Representative**

Form D 9718   (01/97)                  Endorsement Number:



**GREATAMERICAN.**
INSURANCE GROUP

**Non-Profit Organization
Executive Protection and
Employment Practices
Liability Insurance Policy**

## AMENDMENT TO SECTION VIII

It is understood and agreed that Section VIII of the Policy is hereby amended as follows:

**Section VIII. Elite Coverage Amendments**

It is understood and agreed that the following changes are made to the Policy:

1. Section III.C. of the Policy is amended with the addition of the following:

   C. **"Insured Persons"** shall also mean the lawful spouses, estates, heirs, legal representatives or assigns, in the event of their death, incapacity or bankruptcy, of all **Insured Persons** but only for Claims arising out of any actual or alleged **Wrongful Act(s)** of any Insured Persons.

2. Section III. D. of the Policy is deleted and replaced with the following wording:

   D. **"Subsidiary"** shall mean: (1) any entity which qualifies as a not-for-profit organization under the Internal Revenue Code, other than a political committee organized pursuant to Section 432 of the Federal Election Campaign Act of 1971 (and amendments thereto), and for which the **Organization** controls the right to elect or appoint more than fifty percent (50%) of the Board of Directors or other governing body of such entity; (2) any similar not-for-profit organization which was subsequently created or acquired by the **Organization** after the inception date of this Policy, if the entity's total assets do not exceed twenty-five percent (25%) of the total consolidated assets of the **Organization** as of the inception date of this Policy; or (3) any other entity added as a **Subsidiary** by written endorsement to this Policy. Coverage shall apply to a **Subsidiary** only for **Wrongful Acts** committed during the time such entity so qualified as a **Subsidiary**.

3. Section III.E. of the Policy is amended with the addition of the following:

   E. **"Wrongful Act"** shall also mean any matter claimed against any **Insured Persons** solely by reason of their status with the **Organization**.

---

Insured: <u>New World Condominium Apartments II Condo Assn</u>

Policy Period: <u>12/11/2006 To 12/11/2007</u>          Policy Number: <u>EPP3800618-01</u>

Countersigned by: <u>Not Required</u>          Endorsement Effective Date: <u>12/11/2006</u>
                  *Authorized Representative*

Form D9718.012 (01/97)                         Endorsement Number:



**GREAT**AMERICAN.
INSURANCE GROUP

**Non-Profit Organization
Executive Protection and
Employment Practices
Liability Insurance Policy**

### AMENDMENT TO SECTION VIII

4. Section III.G. of the Policy is amended with the addition of the following:

G. "Loss" shall also mean any 10% "excess benefit" tax assessed by the Internal Revenue Service against any **Insured Person** pursuant to 26 USC Section 4958 (a)(2) for participation by management in an excess benefit transaction.

"Loss" shall not include any 25% "excess benefit" tax assessed by the Internal Revenue Service against any **Insured Person** as a "disqualified person" or any 200% "excess benefit" tax for failure to correct the award of the "excess benefit" pursuant to 26 USC Sections 4958 (a)(1) and (b), respectively.

For purposes of this endorsement, "disqualified person", "excess benefit" and "excess benefit transaction" shall be defined as those terms are defined in Section 4958 of the Internal Revenue Code.

5. Section IV.A. is hereby deleted and replaced with the following:

A. brought about or contributed to by: (1) any **Insured** gaining any profit, advantage or remuneration to which the **Insured** was not legally entitled; or (2) the fraudulent, dishonest or criminal acts of any **Insured**; provided, however, this exclusion shall only apply if it is finally adjudicated that such conduct in fact occurred; and the **Wrongful Act** of an **Insured Person** shall not be imputed to any other **Insured Person** for the purpose of determining the applicability of this exclusion;

6. Section IV.B. is hereby deleted and replaced with the following:

B. to the extent it is insured under any other valid and collectible policy or policies, whether such insurance is stated to be primary, contributory, excess, contingent or otherwise, and regardless of whether or not any **Loss** in connection with such **Claim** is recoverable under such other policy or policies; provided, however, this exclusion shall not apply to the amount of **Loss** which is in excess of the amount of any deductible or retention amounts and the limit of liability of such other policy or policies where such **Claim** is otherwise covered by the terms and conditions of this Policy;

7. Section IV.E. is hereby deleted and replaced with the following:

E. for any actual or alleged violation of the Employment Retirement Income Security Act of 1974 (or any regulations promulgated thereunder) or similar provision of any statutory or common law;



**GREATAMERICAN.**
INSURANCE GROUP

**Non-Profit Organization
Executive Protection and
Employment Practices
Liability Insurance Policy**

### AMENDMENT TO SECTION VIII

8. Section VI.B. is deleted and replaced with the following:

   **B.** The **Insurer** has the right to investigate and settle any **Claim**, as it deems expedient. In the event the **Insurer** recommends a settlement and the **Insured** refuses to consent thereto, the **Insurer's** liability for such **Claim** is limited to the amount in excess of the Retention which the **Insurer** would have contributed to the settlement had the **Insured** consented to settlement, the **Costs of Defense** covered by the Policy and incurred prior to the date of such refusal to settle, and 70 percent (70%) of any additional covered **Loss**, including **Costs of Defense**, incurred subsequent to such refusal and subject to the Limit of Liability.

   In the event the **Insured** refuses to consent to a settlement as contemplated above then Section V.C. of the Policy is hereby deleted and replaced with the following:

   **C. Costs of Defense** incurred by the **Insurer** shall be in addition to the Limit of Liability, and such **Costs of Defense** shall be subject to the Retention amount. If **Costs of Defense** are incurred by the **Insured** with the **Insurer's** consent, such **Costs of Defense** shall be considered **Loss** and thus shall be subject to the Limit of Liability and Retentions

9. It is understood and agreed that Section VII.A. is deleted and replaced with the following:

   **A.** The **Insureds** shall, as a condition precedent of their rights under this Policy, give the **Insurer** notice in writing of any **Claim** made, as soon as practicable from the date the Chairman, President, Executive Director, Chief Financial Officer, General Counsel or equivalent has knowledge of the **Claim**, and in no event later than ninety (90) days after the end of the **Policy Period.**

10. It is understood and agreed that Section VIII.A.(2) is deleted and replaced with the following:

   (2) This Policy may only be cancelled by the **Insurer** if the **Organization** does not pay the premium when due.

11. It is understood and agreed that Section VIII. is amended by the addition of the following:

   VIII. M. Territory

   The insurance provided by this Policy applies to **Wrongful Acts** anywhere in the world, provided that a **Claim** is brought against the **Insured** within the United States of America, its territories or possessions or Canada.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Form D9718.012 (01/97)                                   Endorsement Number:



**GREATAMERICAN.**
INSURANCE GROUP

**Non-Profit Organization
Executive Protection and
Employment Practices
Liability Insurance Policy**

### AMENDMENT TO SECTION III

It is understood and agreed that Section III of the Policy is hereby amended as follows:

Section III.G. is deleted in its entirety and replaced with the following:

G. **Loss** shall mean settlements and judgments, including punitive or exemplary damages or the multiple portion of any multiplied damage award, and subject to the provisions of Section V and VI, **Costs of Defense** incurred by the Insured, provided always, however, **Loss** shall not include taxes, criminal or civil fines or penalties imposed by law, or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed. It is understood and agreed that the enforceability of the foregoing coverage shall be governed by such applicable law which most favors coverage for punitive or exemplary damages or the multiple portion of any multiplied damage award.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

Insured: New World Condominium Apartments II Condo Assn

Policy Period: 12/11/2006 To 12/11/2007          Policy Number: EPP3800618-01

Countersigned by: Not Required                   Endorsement Effective Date: 12/11/2006
                  *Authorized Representative*

Form D 9713-2 (01/97)                            Endorsement Number:



**GREATAMERICAN.**
INSURANCE GROUP

**Non-Profit Organization
Executive Protection and
Employment Practices
Liability Insurance Policy**

## COVERAGE FOR ACTS OF TERRORISM

It is understood and agreed that Section VIII. General Conditions of the Policy is hereby amended by the addition of the following:

Section VIII.  General Conditions

 K .  Act of Terrorism Coverage

Subject to all other terms and conditions of this Policy, coverage is available for **Loss** caused by an **Act of Terrorism** as defined below.

"**Act of Terrorism**" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States –

- (i)   to be an act of terrorism;
- (ii)  to be a violent act or an act that is dangerous to –
    - (I)   human life;
    - (II)  property; or
    - (III) infrastructure;
- (iii) to have resulted in damage within the United States, or outside of the United States in the case of -
    - (I)   an air carrier or vessel described in Section (5)(B) of the Terrorism Risk Insurance Act of 2002; or
    - (II)  the premises of a United States mission; and
- (iv)  to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

With respect to any one or more **Acts of Terrorism** under the Terrorism Risk Insurance Act of 2002, we will not pay any amounts for which we are not responsible under the terms of that Act (including subsequent action of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

---

Insured: **New World Condominium Apartments II Condo Assn**

Policy Period: 12/11/2006 To 12/11/2007      Policy Number: EPP3800618-01

Countersigned by: Not Required      Endorsement Effective Date: 12/11/2006
    *Authorized Representative*

Form D 9876   (12/02)      Endorsement Number:



**GREAT**AMERICAN.
INSURANCE GROUP

**Non-Profit Organization
Executive Protection and
Employment Practices
Liability Insurance Policy**

## GENERAL LIMITATIONS OF COVERAGE

It is understood and agreed that this Policy does not apply to any **Claim** made against any **Insured** based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving:

1) actual, alleged or threatened:
    (a) inhalation of, ingestion of, contact with, or exposure to any **Fungi** or bacteria; or
    (b)    existence of or presence of any **Fungi** or bacteria on or within a building or structure including its contents, regardless of whether any other cause, event, material, or product contributed concurrently or in any sequence to any injury or damage; or

(2)    any loss, cost or expense arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating, disposing of, or in any way responding to, or assessing the effects of **Fungi** or bacteria by any **Insured** or by any other person or entity.
For the purposes of this endorsement the term **Fungi** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents, or byproducts produced or released by fungi.

(3)    any actual or alleged liability of an **Insured**, in whole or in part, including but not limited to cross claims, cross claims or third party claims for contribution or indemnity, related to or for **Construction Defect(s).**
For the purposes of this endorsement the term **Construction Defect(s)** means any actual or alleged defective, faulty or delayed construction or any other matter constituting a construction defect under applicable law regardless of whether it results from:
    (a) defective or incorrect architectural plans or other designs,
    (b) defective or improper soil testing,
    (c) defective, inadequate or insufficient protection from subsoil or earth movement or subsidence,
    (d) construction, manufacture or assembly of any tangible property,
    (e) the failure to provide or pay for any construction-related goods or services, or
    (f) the supervision or management of any construction-related activities.

(4)    any actual or alleged liability of an **Insured**, in whole or in part, in the capacity as a builder or developer, or in the capacity of a sponsor of the **Organization**, or of an Insured affiliated with such a builder, developer or sponsor, and which is related to actual or alleged misconduct on the part of such builder, developer or sponsor, including but not limited to actual or alleged conflict of interest, self-dealing, or disputes concerning conversion, construction or development.

(5)    actual or alleged noise or interference with quiet enjoyment

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy other than as above stated.

---

Insured: New World Condominium Apartments II Condo Assn

Policy Period: <u>12/11/2006 To  12/11/2007</u>        Policy Number: <u>EPP3800618-01</u>

Countersigned by: <u>Not Required</u>        Endorsement Effective Date: <u>12/11/2006</u>
         *Authorized Representative*
Form  D 9500-2        (01/97)        Endorsement Number:

# Non-Profit Organization Executive Protection and Employment Practices Liability Insurance Policy



### GREATAMERICAN.

INSURANCE COMPANIES

580 Walnut Street, Cincinnati, Ohio 45202

D.9100 (12/99)

**THIS IS A CLAIMS MADE POLICY, READ IT CAREFULLY.**

In consideration of the payment of the premium and in reliance upon all statements made and information furnished to the company shown in the Declarations (a stock insurance company, hereinafter called the Insurer), including the statements made in the Proposal Form and subject to all terms, conditions and limitations of this Policy, the Insured and Insurer agree:

## Section I. Insuring Agreement

If during the Policy Period or the Discovery Period any Claim is first made against an Insured for a Wrongful Act, including an Employment Practices Wrongful Act, the Insurer shall pay on their behalf Loss resulting from such Claim. The Insurer has the right and duty to defend any Claim to which this insurance applies, even if the allegations of the Claim are groundless, false or fraudulent.

## Section II. Discovery Period

A. If this Policy is not renewed or is cancelled, either by the Organization or the Insurer, for any reason other than non-payment of premium, the Organization shall be entitled to acquire an additional reporting period for Claims first made against an Insured as set forth below, but only with respect to Wrongful Acts committed prior to the end of the Policy Period. This additional reporting period shall be referred to as the Discovery Period.

B. If this Policy is not renewed or is cancelled by the Insurer for any reason other than non-payment of premium, the Discovery Period shall be the period of ninety (90) days from the end of the Policy Period, and there shall be no charge for this Automatic Discovery Period of ninety (90) days. If prior to the end of the Automatic Discovery Period the Organization pays the Insurer an additional amount equal to forty percent (40%) of the annual premium of this Policy, the term of the Discovery Period shall be extended for an additional twelve (12) months from the end of the Automatic Discovery Period. The Insured shall have no right to purchase this extension of the Discovery Period at any later date.

C. If this Policy is not renewed or cancelled by the Organization, the Organization may purchase a Discovery Period of twelve (12) months from the end of the Policy Period, provided that the Organization pays the Insurer an additional amount equal to forty percent (40%) of the annual premium of this Policy within thirty (30) days of the end of the Policy Period. The Organization shall have no right to purchase this Discovery Period at any later date

D. A renewal quotation by the Insurer incorporating different terms, conditions, Retention, Limit of Liability or premium with respect to the coverage afforded by this Policy shall not be deemed to constitute a refusal to renew by the Insurer for the purpose of determining the right to the Discovery Period.

E. The fact that this Policy may be extended by virtue of the Discovery Period shall not in any way increase the Limit of Liability stated in Item 3 of the Declarations. For purposes of the Limit of Liability, the Discovery Period is considered in he part of and not in addition to the last Policy Year.

## Section III. Definitions

A. "Organization" shall mean the entity named in Item 1 of the Declarations.

B. "Insured" shall mean the Organization and any Subsidiary and all Insured Persons.

C. "Insured Persons" shall mean all persons who were, now are, or shall be directors, trustees, officers, employees, volunteers or staff members of the Organization or its Subsidiaries, including any executive board members and committee members whether salaried or not.

D. "Subsidiary" shall mean any entity which qualifies as a not-for-profit organization under the Internal Revenue Code, other than a political committee organized pursuant to Section 432 of the Federal Election Campaign Act of 1971 (and amendments thereto), and for which the Organization has or controls the right to elect or appoint more than fifty percent (50%) of the Board of Directors or other governing body of such entity, or any other entity added as a Subsidiary by written endorsement to this Policy. Coverage shall apply to a Subsidiary only for Wrongful Acts committed during the time such entity so qualified as a Subsidiary.

E. "Wrongful Act" shall mean any actual or alleged error, misstatement, misleading statement, act or omission, neglect or breach of duty, or Employment Practices Wrongful Act by the Organization, and/or a Subsidiary, and/or any Insured Persons acting in their capacity with the Organization or a Subsidiary.

F. "Employment Practices Wrongful Act" shall mean: (1) wrongful dismissal, discharge or termination of employment, whether actual or constructive; (2) employment related misrepresentation; (3) violation of employment laws; (4) sexual or workplace harassment of any kind; (5) discrimination; (6) wrongful failure to employ or promote; (7) wrongful discipline; (8) wrongful deprivation of career opportunity including a wrongful failure to hire or promote; (9) failure to grant tenure; (10) negligent evaluation; (11) retaliation; and/or (12) failure to provide adequate workplace or employment policies or procedures.

G. "Loss" shall mean settlements and judgments, and subject to the provisions of Section V and Section VI, Costs of Defense incurred by the Insured, provided always, however, Loss shall not include taxes, criminal or civil fines or penalties imposed by law, punitive or exemplary damages, or the amount of any multiple damage award which is in excess of the damage award which was so multiplied, or any matter which may be deemed uninsurable under the law pursuant to which this Policy shall be construed.

H. "Costs of Defense" shall mean any reasonable and necessary legal fees and expenses incurred in defense of any Claim and appeals therefrom, and cost of attachment or similar bonds (but without any obligation on the part of the Insurer to apply for or furnish such bonds); provided, however, Costs of Defense shall not include: (1) salaries, wages, overhead or benefit expenses associated with any Insured; and (2) any amounts incurred in defense of any Claim which any other insurer has a duty to defend, regardless of whether or not such other insurer undertakes such duty.

I. "Policy Year" shall mean the period of one year following the effective date and hour of this Policy or the period of one year following any anniversary date thereof falling within the Policy Period; or if the time between the effective date or any anniversary date and the termination of this Policy is less than one year, such lesser period. Any Discovery Period shall be considered part of and not in addition to the last Policy Year.

J. "Policy Period" shall mean the period from the inception of this Policy to the Policy expiration date stated in Item 2 of the Declarations or its earlier termination, if any.

K. "Claim" shall mean: (1) any proceeding initiated against an Insured, including any appeals therefrom, before (a) any governmental body which is legally authorized to render an enforceable judgment or order for money damages or other relief against such Insured, or (b) the Equal Employment Opportunity Commission, or any similar governmental body whose purpose is to address employment practices; or (2) any written demand seeking money damages for a Wrongful Act.

L. "Related Wrongful Acts" shall mean Wrongful Acts which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision.

## Section IV. Exclusions

This Policy does not apply to any Claim made against any Insured:

A. brought about or contributed to in fact by: (1) any Insured gaining any profit, advantage or remuneration to which the Insured was not legally entitled; or (2) the fraudulent, dishonest or criminal acts of any Insured; however, the Wrongful Act of an Insured Person shall not be imputed to any other Insured Person for the purpose of determining the applicability of this exclusion;

B. to the extent it is insured under any other valid policy or policies, whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, and regardless of whether or not any Loss in connection with such Claim is recoverable under such other policy or policies; provided, however, this exclusion shall not apply to the amount of Loss which is excess of the amount of any deductible or retention amounts and the limit of liability of such other policy or policies where such Claim is otherwise covered by the terms and conditions of this Policy;

C. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving:

   (1) any Wrongful Act or any fact, circumstance or situation which is the subject of any notice given by any Insured during the policy period or any extension thereof of any prior policy providing coverage similar to that provided herein, or which has been the subject of any Claim made prior to the effective date of this Policy; or

   (2) any prior and/or pending civil, criminal, administrative or investigative proceeding initiated against any Insured as of the date stated in Item 8 of the Declarations;

D. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or any way involving: (1) bodily injury, sickness, disease or death of any person, assault, or battery; or (2) damage to or destruction of any tangible property, including the loss of use thereof; or (3) mental anguish, emotional distress, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, libel or slander; provided, however, that part (3) of this exclusion shall not apply to any Claim brought by or on behalf of any past, present or prospective Insured Person for an Employment Practices Wrongful Act;

E. based upon, arising out of, relating to, directly or indirectly resulting from or inconsequence of, or in any way involving any actual or alleged violation of the Employee Retirement Income Security Act of 1974 (or any regulations promulgated thereunder) or similar provision of any statutory or common law;

F. for any wrongful act of an Insured Person in their capacity as a director, officer or employee of an entity other than the Organization or a Subsidiary, even if directed or requested to serve such other entity, except where this Policy has been specifically endorsed to provide such extension of coverage;

G. based upon, arising out of, relating to, directly or indirectly resulting from or inconsequence of, or in any way involving actual or alleged seepage, pollution, radiation, emission or contamination of any kind;

H. by, or for the benefit of, or at the behest of the Organization or a Subsidiary or any entity which controls, is controlled by, or is under common control with the Organization or a Subsidiary, or any person or entity which succeeds to the interest of the Organization or a Subsidiary;

I. for any actual or alleged liability of any Insured under any contract or agreement, express or implied, written or oral, except for employment related obligations which would have attached absent such contract or agreement;

J. for any obligation of the Organization or a Subsidiary to modify any building or property in order to affect compliance with municipal, state or federal law.

## Section V. Limit of Liability

A. The Insurer shall be liable to pay one hundred percent (100%) of Loss in excess of the Retention stated in Item 4 of the Declarations. The Insurer's maximum Limit of Liability for the aggregate amount of Loss resulting from all Claims deemed to have been made in a Policy Year shall be the amount shown in Item 3 of the Declarations.

B. More than one Claim involving the same Wrongful Act or Related Wrongful Acts of one or more Insureds shall be considered a single Claim, and only one Retention shall be applicable to such single Claim. All such Claims, constituting a single Claim shall be deemed to have been made on the earlier of the following dates: (1) the earliest date on which any such Claim was first made; or (2) the earliest date on which any such Wrongful Act or Related Wrongful Act was reported under this Policy or any other policy providing similar coverage.

C. Costs of Defense incurred by the Insurer shall be in addition to the Limit of Liability, and such Costs of Defense shall not be subject to the Retention amount. If Costs of Defense are incurred by the Insured with the Insurer's consent, such Costs of Defense shall be considered Loss and thus shall be subject to the Limit of Liability and Retention.

D. With respect to all Claims deemed to have been made in a Policy Year, should the Limit of Liability be exhausted by payment of Loss resulting from one or more of such Claims, the Insurer's duty to defend shall cease and any and all obligations of the Insurer hereunder shall be deemed to be completely fulfilled and extinguished and the Insurer shall have no further obligations hereunder of any kind or nature.

## Section VI. Costs of Defense and Settlements

A. No Insured shall admit liability, offer to settle, or incur Costs of Defense in connection with any Claim without the Insurer's prior written consent. Such consent shall not be unreasonably withheld. The Insured shall provide the Insurer with full cooperation and all information which would reasonably be required in order to allow the Insurer to reach a decision as to such consent. Any Costs of Defense incurred and/or settlements agreed to prior to the Insurer's consent thereto shall not be covered hereunder.

B. The Insurer has the right to investigate and settle any Claim, as it deems expedient. In the event the Insurer recommends a settlement and the Insured refuses to consent thereto, the Insurer shall be released from any obligation to further defend such Claim. Subject to the Limit of Liability, the Insurer's liability for such Claim is limited to the amount in excess of the Retention which the Insurer would have contributed to the settlement had the Insured consented to settlement, plus Costs of Defense covered by the Policy incurred prior to the date of such refusal to settle.

## Section VII. Notice of Claim

A. The Insureds shall, as a condition precedent of their rights under this Policy, give the Insurer notice in writing of any Claim made, as soon as practicable.

B. If during the Policy Period or Discovery Period the Insured first becomes aware of a specific Wrongful Act, and if the Insured gives written notice to the Insurer as soon as practicable of (1) the specific Wrongful Act; (2) the injury or damage which has or may result therefrom; and (3) the circumstances by which the Insured first became aware thereof; then any Claim arising out of such Wrongful Act which is subsequently made against the Insured and not otherwise excluded by the terms of the Policy shall be deemed to have been made at the time the Insurer received such written notice from the Insured.

C. In addition to furnishing the notice as provided in Section VII A or B the Insured shall, as soon as practicable, furnish the Insurer with copies of reports, investigations, pleadings and other papers in connection therewith.

D. Notice to the Insurer as provided in Section VII A or B shall be given to:

GREAT AMERICAN INSURANCE COMPANIES
EXECUTIVE LIABILITY DIVISION, CLAIMS DEPARTMENT
P.O. BOX 66943
CHICAGO, IL 60666.

## Section VIII. General Conditions

A. Cancellation or Non-Renewal

(1) This Policy may be cancelled by the Organization at any time by written notice to the Insurer. Upon cancellation, the Insurer shall retain the customary short rate portion of the premium.

(2) This Policy may be cancelled by or on behalf of the Insurer by delivering to the Organization at the address stated in Item 1 of the Declarations, written notice stating when, not less than ninety (90) days thereafter, the cancellation shall be effective. The delivery of such notice shall be sufficient proof of notice and this Policy shall terminate at the date and hour specified in such notice. Upon cancellation, the Insurer shall retain the pro-rata portion of the premium. Payment or tender of any unearned premium by the Insurer shall not be a condition precedent to the effectiveness of cancellation but such payment shall be made as soon as practicable.

(3) If the Insurer elects not to renew this Policy, the Insurer shall provide the Organization with not less than ninety (90) days advance notice thereof.

B. Proposal Form

It is agreed that the particulars and statements contained in Proposal Forms submitted to the Insurer (and any material submitted therewith) are the representations of the Insured, and it is understood that such representations are material and that this Policy is issued in reliance upon such representations, which are to be considered as incorporated in and constituting part of this Policy. However, this Policy shall not be voided or rescinded and coverage shall not be excluded as a result of any untrue statement in the Proposal Form, except as to the Organization, its Subsidiaries and those Insured Persons making such statement or having knowledge of its untruth.

C. Action Against the Insurer

(1) No action shall be taken against the Insurer unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy, and until the Insured's obligation to pay shall have been finally determined by an adjudication against the Insured or by written agreement of the Insured, claimant and the Insurer.

(2) No person or organization shall have any right under this Policy to join the Insurer as a party to any Claim against any Insured nor shall the Insurer be impleaded by any Insured or their legal representative in any such Claim.

D. Conversion to Run-Off Coverage

If prior to the end of the Policy Period, another organization acquires substantially all of the assets of the Organization, or the Organization merges into another organization, or the Organization ceases to qualify as a not-for-profit organization under the Internal Revenue Code (such events hereinafter referred to as Transaction), then:

(1) the Organization must give written notice of such Transaction to the Insurer within thirty (30) days after the effective date of such Transaction, and provide the Insurer with such information as the Insurer may deem necessary; and

(2) this Policy, including the Discovery Period if elected, shall apply, but only with respect to any Wrongful Act committed prior to the effective date of such Transaction.

E. Subrogation

In the event of any payment under this Policy, the Insurer shall be subrogated to all of the rights to recovery of the Insured and the Insured shall execute all papers required and shall do everything that may be necessary to secure such rights, including the execution of such documents as may be necessary to enable the Insurer to effectively bring suit in the name of any Insured.

F. Assignment

Assignment of interest under this Policy shall not bind the Insurer until its consent is endorsed hereon.

G. Conformity to Law

Any terms of this Policy which are in conflict with the terms of any applicable laws are hereby amended to conform to such laws.

H. Entire Agreement

By acceptance of this Policy, the Insured and the Insurer agree that this Policy (including the Proposal Forms submitted to the Insurer and any materials submitted therewith) and any written endorsements attached hereto constitute the entire agreement between the parties.

I. Organization Represents Insured

By acceptance of this Policy, the Organization shall be designated to act on behalf of the Insureds for all purposes including, but not limited to, giving and receiving of all notices and correspondence, the cancellation or non-renewal of this Policy, the payment of premiums, and the receipt of any return premiums that may be due under this Policy.

J. Representative of the Insurer

Great American Insurance Companies, Executive Liability Division, Post Office Box 66943, Chicago, Illinois 60666 shall act on behalf of the Insurer for all purposes including, but not limited to, the giving and receiving of all notices and correspondence.

In witness whereof the Insurer has caused this Policy to be signed by its President and Secretary and countersigned, if required, on the Declarations page by a duly authorized agent of the Insurer.

GREAT AMERICAN INSURANCE COMPANIES

*Kenn Holly Howell*
Secretary

*Carl H. Lindner III*
President